Counsel, you may proceed. Good morning, Your Honor. Morning. I'm here on the appeal of a district court granting of a motion to dismiss. My client is Basalite, Pacific Coast Building Products. Generally speaking, obviously the courts prefer to have cases decided on the merits at trial and tribal issues of fact, and generally speaking, the motions to dismiss are disfavored. We do, if there's a tolerable claim for relief. The problem here is that the district court ruled, as a matter of law, in looking at the policy language and the allegations of the complaint and what little extrinsic facts were available, that there was no conceivable basis for coverage. So in order to grant you the relief that you are asking for, we're gonna have to determine that that was wrong. So can you tell me why Judge Shub was wrong in making that decision? Sure. Well, first, I think, generically speaking, the case law in California is that the insurers bear the burden of proof on disproving coverage, not that the insured bears the burden of proof. We understand that. Right. And I'm saying, generally speaking. We know what the general principles are. Why was Judge Shub wrong in the language of the contract? I mean, part of the problem you've got here is there's no property damage, there's no occurrence, and the underlying complaint alleges intentional conduct, and that can't be an accident. So why was the district court wrong in saying there's no coverage under the terms of the policy? Well, on the property damage element, for example, let's just start off with that. The property damage element, the language in the complaint says that the property was not returned. So how's that damage? That might be wrongful conversion. Would that be a loss-of-use claim? It might be an unlawful bail. But you didn't allege loss-of-use, number one. And number two, how is intentionally not return an accident? Okay. Well, good point, Your Honor. The word intentional is not in that paragraph. Okay. It's nowhere in the paragraph. Well, but the allegation is these parties were in a bitter post-contract dispute over failure to pay fees, and there was a demand made for the return of the molds. The molds were not returned. How is that anything but intentional? Well, let's take, for example, Your Honor, I loan you my lawnmower, okay? You don't return it, which is what the complaint says. You just simply didn't. Well, let's assume that we're also having a really bad fight over where the fence line is between our properties. Fair enough. And that we have a contract that says, I want to borrow your mower for which I will pay you some certain. Right. Okay. But the return of the mower, it does not say we did not intentionally not return the mower. It does not say we did not intentionally not return the molds. Well, how can you not intentionally return it if demand is made and you're directed to cease and desist your activities, and in the face of all of that, you do nothing? Isn't that intentional? Well, that's assuming that we still had the molds in question to return. That's the question is here, if the molds, as we said, when the you can't read, and it's improper for the district court to add the word intent in front of the words not returned, because it doesn't say that. And a district court just has to read the allegations of the complaint in their as they are written, not just pick out one little phrase, which is we're not returned, and read that in isolation from all the other phrases, words. Well, actually, in an insurance contact, that's improper to infer words in the underlying complaint. But we're not inferring words. We're simply not reading three words, ignoring the context in which they appear. Well, let's say, for example, that the reason why the molds were not returned is because they had been broken by my client accidentally during the course of manufacturing. So when it came time that there was a demand made to return the molds, the molds could not be to return because they were broken. Now, under that circumstance, slam-dunk coverage. You can't ‑‑ we would have coverage because that would be an occurrence. So what would have been the occurrence, then? Huh? What would have been the occurrence? Because if they broke ‑‑ Occurrence is when we broke their molds. All right. But you don't have that here. Well, it doesn't say there was no ‑‑ it doesn't say why they weren't returned. It does not say that we ‑‑ see, the case law that the Court relied on, the word that the Court focused on was the word withheld. And the Court said the word withheld confers a mens rea element. Not returned does not have a mens rea component because there's many reasons. There are thousands of reasons why something is not returned. And so, for example, it's equally as possible they weren't returned because they were broken and they could not be returned. Well, let's look at the other exclusion of the policy, which I think is a tougher one for you, and that is that this all arises out of a breach of contract. Well, the case law says, first of all, that the contract was terminated and no longer in existence. So what they're ‑‑ the damages they're seeking are contract ‑‑ are not contractual based damages. I thought you had a claim for unpaid royalty fees as part of your action. Isn't that contract based? It has to be. No. Because they allege ‑‑ It's not. How do you determine what the fees are that are due and owing? They claim that the contract was terminated and that after the contract was terminated, my client engaged in wrongful acts. The policy in question ‑‑ so most you would have, after the contract ‑‑ Did the contract establish that there was a duty to pay royalties? Or whatever the knowhow was that was being delivered to them? Well, under the first cause of action, you arguably have a contract based claim. Counsel? Counsel? Could you answer my question? It's a very simple question. Okay. Sorry. Did the contract contain provisions establishing a duty to pay royalties? During what period of time? Well, during the time that it was effective. During the time that it was effective, there is a issue on the payment of royalties. After the termination, there is no contract. But at that point, don't you have the other exclusion, even assuming you're right, don't you then have the other exclusion, which is that it arises from an intellectual property dispute? Well, no. Do you allege trademarks, violations, improper use, infringing use of trademarks? Well, the complaint as drafted by Keystone, first of all, going back to the exclusion that you're talking about regarding the contractual exclusion, once the contract is terminated, at most you have an implied contract. The policy in question, as we cited, has an exception that says implied contracts actually are covered. So expressly, the policy covers what would be an implied contract that would exist after the contract is terminated. So the question— Counsel? Counsel? Could you interpret for me paragraph one of your second amended complaint at ER 312 and read the language of the beginning of that sentence to me? Paragraph one in the statement of the case? Yes, under introduction. It says, action arises from a defendant-insurance carrier's failure— No, no. This is second amended complaint. ER 312. Do you have it? No, I do not. Would you get it, please? I do not have it in front of me. I did not bring it. Did you refer to the oral argument before the Ninth Circuit? I brought—I brought my—I apparently was given the wrong— Well, let me help you. It says, this is an action for breach of contract against the defendants, Baselight, Pacific and Builders, based on their failure to pay royalties, and then it goes on. Okay. Why is that not an allegation arising from a breach of this contract and a failure to pay royalties? Your Honor, I'm sorry. When you said your complaint, your second amended complaint, my client sued the insurance carriers. This is Keystone's complaint. It's the Keystone complaint. Yes. I do have a copy of it in front of me. I'm sorry. Okay. So can you look at that? Isn't that alleging an action for breach of contract? Well, it also says, this is also an action. So unless you delete the second sentence in that paragraph— But that takes you to my question. Of the post—okay. Now— Yes. The post-contract exclusion. So you've got exclusion under the contract, and then you've got claims involving intellectual property, which are also— Trademark and patent infringement. You also have claims regarding know-how and molds, and that's throughout the complaint. Now, if you look at—so, for example, if you look at the very back of the complaint, assuming that the district court was correct in their analysis, and you look at the very— And the district court didn't get to these exclusions because the district court made the decision on the basis of no coverage, right? Well, the district court analyzed the exclusions. Yes, they did, obviously. And so the issue is that if you look at the prayer for relief in the complaint, and you look at D in the prayer for relief, it says, issue preliminary and permanent injunctions enjoining and restraining defendants from using Keystone's know-how, molds, patent rights, and trademarks. P.S., because there is allegation that Baselight continued to use the molds— Yes. That sort of undercuts your argument that there could have been an argument that the molds were not returned because they were damaged or lost. Well— But putting that aside, let's focus on the exclusions. That's assuming that we didn't make our own molds. If we broke their molds— How aren't you getting into, I mean, and ensure a court doesn't have to guess at what could have been alleged. Right. Well, but if it could have been alleged or it could have been an argument, there is coverage. That's the rule. There was an opportunity to amend. And, yes, there is potential coverage, but there is a limit on the amount of speculation that a court is required to engage in, in the cases as I read them. I'm looking at D in the prayer for relief, as I just read to you, okay? Now, the problem is that the intellectual property rights that you're talking about here are only, that are excluded in the policy, are only the patent rights and trademarks, according to, at least what the court reasoned. The problem, of course, is that there is also relief sought related to the know-how itself. Now, the know-how, as we pointed out, is not an intellectual property right. Technically. The know-how would fall under either a trade dress or copyright, which is covered under the policies. The know-how is not allegedly, as defined in the complaint. I thought the retaining wall systems were patented systems. Well, but that's under the patent claim. Right. This relief says know-how. But doesn't know-how fall within patents, particularly when you're talking about putting together a system that constitutes a retaining wall? No. Why not? Because know-how is defined as including documents, specifications, brochures, marketing strategies. And I thought those were contained in manuals that were provided by Keystone, so that Baselight would know how to manufacture these retaining wall systems. Isn't there an allegation of that? No. The know-how is defined as including marketing strategies. There's no allegation with regard to the fact that we tendered to them these manuals that contain all of our trade secrets as to how we do this? No. And they're continuing to use those trade secrets and manufacture competing products using our know-how? No. There's no allegation of that? Am I totally misreading this? Yes, you are. Okay. What was given to the carrier was a copy of the advertising brochures. So because we're selling the product to the public, so we have advertising brochures that advertise our product to the public. There were 1,200 pages of advertising brochures. Okay. This is the material that was provided after the case had settled, correct? Correct. Okay. So let's ignore that for the time being. Okay. Focus on what they had at the time the case was settled and final judgment was entered, the underlying case. Right. But the documents that are referenced in the know-how allegation, it says documents used in the marketing and sale of products. If you look at the words, it says documents used in the marketing and sale of products. Now, a document cannot be subject to trademark. A document cannot be subject to patent. There's no such thing as a patent or trademark on a document. A document can only be subject to essentially a copyright claim or a trade dress claim. So when the allegations of the unfair business practices, when it says we were selling and advertising these products using documents. So why do I find all references to that in the complaint at ER-322 under the claim for defendant's unauthorized use of Keystone's trademarks and patent rights after the termination date? And at ER-323, the second amended complaint defines, asserts advertising injury claims as misuse of know-how, including misuse of trademarks, which is defined as using the term Keystone in connection with the promotion or sale, i.e. advertising, marketing. Well, in the unfair business practice claim, the allegations regarding the molds, et cetera, are incorporated in there. To get an injunction, the only available injunction you would have under this complaint to enjoin our use of the documents, the sales brochures, in connection with continued sale of the products under the know-how claim, is the unfair business practice claim. Paragraph 260 of that complaint does not mention at all trademark. It does not use the word trademark. So paragraph 260 in the unfair business practice claim and, in fact, the unfair business practice when they cite to Federal common law and to Federal statutes do not reference trademarks as being the exclusive things they're seeking relief under. Counsel, you are out of time. Why don't we hear from the other side? Okay, sure. Good morning, Your Honors. Good morning. My name is Daniel Graham, and I represent the Appellee's National Union and Chartist Specialty. Judge Shub wasn't wrong. Your Honors, the district court concluded correctly that the insurer's personal and advertising injury coverage and the property damage coverage did not extend to the claims asserted against Basilite in the underlying keystone action. The district court's dismissal of Basilite's complaint against the insurers was therefore proper, and we ask that the judgment be affirmed. Your Honors, the problem here is Basilite engages consistently in a selective, incomplete reading of the allegations of the complaint. For example, counsel points to allegation 260 and points out that there is no reference to the trademarks in that allegation. But, Your Honors, that allegation is being read entirely in isolation. If you look at the entire cause of action, unfair competition, it's replete with references to the trademark. That is likewise true with respect to the 19th cause of action, dilution. It's all about the trademarks. The trademarks are identified in the Second Amendment complaint. If there's any doubt as to what's at issue, you turn to the prayer for relief at the very end of the complaint, Your Honors. Paragraph G, it's ER 389 of the record. Awarding money damages, and that's important because this is a liability policy. It applies to claims seeking damages for covered relief. It's not about injunctive relief. It's about where, what is, for what basis are damages sought. And here, awarding money damages for the infringement, unfair competition, and dilution in relation to the trademarks. Council tries to, or Baselight tries to attach significance to this idea of know-how and argues that somehow this transforms the nature of this trademark infringement, patent infringement claim. And it's based on an incomplete and incorrect reading of the license agreement, which is, incidentally, Your Honors, referenced and incorporated throughout this complaint. And as a matter of fact, the license agreement's terms with respect to the use of the patents and the trademarks are contained throughout the second amended complaint. So that's all there attached as an exhibit to the complaint. But in that license agreement, Section 17 of the license agreement defines confidential information, confidential information to encompass know-how. It's confidential. It pertains to marketing strategies, too. This is proprietary. This is confidential information that Keystone is entrusting to Baselight. And so the know-how at issue is not about a copyright or a trade dress or slogan. It doesn't transform the nature of the claims in this Keystone action. It's just talking about know-how. And incidentally, Your Honors, no damages are sought for know-how. Baselight pointed to the prayer for relief and talked about Paragraph D. The request is for preliminary and permanent injunctions. That has nothing to do with damages being sought for know-how. And incidentally, the know-how is proprietary. It's characterized as trade secrets. The intellectual property exclusion doesn't just apply to trademarks and patents. It also encompasses personal and advertising injury arising out of the misuse of trade secrets and other intellectual property. So the intellectual property exclusion is quite applicable here, as is the breach of contract exclusion. There's been an argument that's been made that, well, this license agreement is terminated, and therefore this really isn't about the license agreement anymore. This isn't breach of contract anymore. It's an implied contract. That's not true. Your Honor, you had pointed out the basis for this lawsuit being initiated. And the Second Amended Complaint is very specific that it is predicated on the license agreement. It's the whole reason it was filed. The Second Amended Complaint, Allegations 29 and 30, talk about bringing the lawsuit pursuant to the license agreement. And 3234, Your Honors, that's at the record ER 316 and 317. The Second Amended Complaint quotes at length with respect to the prohibitions in the license agreement regarding the misuse of the patents and the misuse of the trademarks. All of that is included in the Second Amended Complaint. This Court's trenches decision, which we reference in our 28J letter that was sent on June 2, 2014, is very much on point. In that case, this Court concluded, pointed out first of all that under California law, the phrase arising out of is construed broadly, even in an exclusion, and means originating from, flowing from, incident to, or having a connection with. And with that understanding of the breach of contract exclusion and the arising out of language, this Court concluded that and ensured that it was alleged to have violated a franchise agreement by continuing to use trade dress after the termination of the agreement applied to preclude coverage. Of course, we found the district court found no trade dress here. That's correct, Your Honor. And I don't hear that being challenged vigorously in an argument. But backing away for a moment, if you will, from the exclusion. Yes, Your Honor. And looking at the conclusion that there was no coverage alleged for misuse of another's under the policy terms, does alleging misuse of know-how, which is itself a defined term that includes marketing strategies, does that raise the potential of coverage for misuse of another's advertising idea that might implicate coverage even if the exclusion were to be applicable? No, Your Honor, because as far as the know-how is concerned, it refers to marketing strategies. But in the context of the definition, it's also very clear this is confidential information. So in other words, it's set up in an enumerated list that includes specifications and confidential information. So it's not the same as maybe using some type of advertising idea to promote the product, this is our mascot or something like that. This is marketing strategies, and this is Keystone's proprietary way of marketing its products to the public. Meaning trademarks in the context of the Second Amendment complaint. Is that what your point is? I don't believe that know-how encompasses trademarks, Your Honor, because know-how is identified as confidential. All right. And obviously trademark strength is in its displaying itself or being presented to the public. All right. But, you know, as far as the idea that this agreement terminated, this isn't about breach of contract anymore and you can't rely on the exclusion, the supplemental excerpts of the record, 142, I'm referencing specifically the licensing agreement. And this is an agreement that Baselight agreed with Keystone, and that provision provides a 25C, licensee shall not be released from any of its obligations under this agreement by any termination of this agreement. So in the licensing agreement, the parties are being very clear. You don't just say, well, we terminated the agreement, all bets are off, and we're going to do what we want to do. That's not what's going on here. It's very clear from Keystone's perspective this is all about violations of a licensing agreement. The specificity in this pleading is very clear. It's about trademarks. It's about patents. It specifically identifies the intellectual properties at issue, and it does so even in the prayer for relief. From start to finish, the causes of action are very clear. Does Baselight in their second tender contain any information that would have required further investigation by the insurer if the information had been provided with the first tender? Your Honor, as far as the information that was provided, the information that was provided by Baselight was provided after the underlying lawsuit was all finished and done. What's interesting about that is when the insurers denied coverage, in their position letter on January 23, 2012, they specifically said and requested that Baselight provide any additional information that Baselight felt either would cause the insurers to review their position or assist them in their investigation or determination. How long before the case settled and final judgment entered was that invitation issued? Well, the disclaimer was issued January 23, 2012. The action was settled March 22, 2012, and it was dismissed August 10, 2012. So there was time. And then additional time. And then they provide these materials, and they say, Aha, see, this shows this is all about copyright, trade dresser, slogan. It's after the lawsuit is done. And California law is clear. You can't take a look at that extrinsic evidence and wave that in front of the insured and say, See, this proves you had a duty to defend if the insurer never had that information. But moreover, Your Honors, that information does not demonstrate anything inconsistent with the allegations in the complaint. It doesn't demonstrate that this is about copyright or trade dresser, slogan. It confirms that this is material that had the trademarks on it. And in Paragraph, in the second amended complaint, Keystone sought return of the documents and all materials on which the trademark appears. So, again, just look at these materials. It's not like, Okay, there's that aha moment. This is really about copyright infringement, trade dress. It's none of that, Your Honors. It's consistent with what's alleged in the second amended complaint, which is trademark infringement and patent infringement. And that's excluded by the intellectual property exclusion, and it's also excluded by the breach of contract exclusion. If I could have just a moment on the property damage caused by an occurrence. In bringing their claims against the insurers, Basilite itself alleged at ER 116, Paragraph 26, the contract alleged that plaintiffs improperly used, or excuse me, Keystone alleged that plaintiffs improperly used and retained Keystone's property in the form of molds used as part of its operation. Improperly used. They say it right in their own complaint that they asserted against the insurers, and rightfully so because that assertion and that allegation is consistent with what is presented in the second amended complaint, which leaves no doubt that these are allegations that from Keystone's perspective was a resistance to a cease and desist letter by Basilite, and a continued deliberate and willful use of the property, notwithstanding that cease and desist demand. I see I still have quite a bit of time, Your Honors. I'd be happy to. Unless the panel has anything further, I don't think we need to hear any more. For all the reasons that we've discussed here this morning and the reasons set forth in our brief, we respectfully request that this Court affirm the district court's judgment in all respects and grant such further and additional relief as this Court deems just. But what do you want besides an affirmance, which I'll entitle you to? I think he wants a quick affirmance. Is that what you want? Something I can bring home to Chicago. Okay. I feel good. I don't think we're going to give you an answer quite that fast. Understood, Your Honors. But I do thank the Court for its time. All right. Thank you, counsel. Counsel, I'll give you a minute in rebuttal. Real quick. First, the denial letter that he's referencing, there's no evidence before your court of that. That's oral testimony. This is what we complained about to the district court. Counsel's making up facts. It's not in our complaint. This is a motion to dismiss. You don't get to make up facts as to when things happen and what letters are not before the court. So that has to be stricken. That has to be ignored because it's not a fact that's in the record. The district court did not know when it ruled that the case had been settled before the 1,200 documents were tendered to the carriers? No. The district court did not. He just argued that in their denial letter they requested additional information. There is no evidence in the record in our complaint or otherwise that references that fact. That's a new invented fact by counsel. But wasn't this discussed with the district court? I thought I read it in the record. And I objected to the district court that counsel, an oral argument was modifying, making a motion to dismiss. You can object all you want. But the point is that counsel didn't just make it up on appeal. It was in the record before the district court. You objected to it. Right. Okay. So we're still going to be saying we're still. But, again, there's no. It was the same objection. Yeah. There's no fact in front. On a motion to dismiss, you can't add facts based upon oral argument by counsel. As to the trade dress claims, we actually do vigorously contest the trade dress claims because trade dress, the statute for trade dress and that subsection that applies to trade dress is cited in the complaint specifically. Finally, counsel just got up and started inventing arguments, arguing that know-how was all confidential information. That does not appear in the complaint, nor does it appear in anywhere. We can read the definition in the relevant documents. I'm not sure you're aiding your argument here. I mean, the language. Hyperbole inventing doesn't help. Yeah. The language says what it says. Right. But I'm saying that. It's not really helping us. Okay. But there's no. The word confidential does not appear in our complaint. It does not appear. With related to know-how, there is no allegation in the Second Amendment complaint or our complaint. So I'm saying when counsel is standing here and telling you that the word confidential appears, it is not there. So that's a, again, that's a fact that cannot be relied on because it's not before the Court. The point is noted. Okay. And then the last. The case just argued is submitted. The last case on the calendar is submitted on the briefs, and we stand at recess. All rise. Okay. Just leave it. Okay. Okay. Good.
judges: Rosenthal, Tallman, Callahan